## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8504 | **DATE** | 12/23/2002 |
| **CASE TITLE** | Quinn, et al. vs. Village of Elk Grove Board, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants Summary Judgment Motions

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons given in the attached memorandum opinion, Defendant MacArthur's Summary Judgment Motion [#26] is denied. Defendant Elk Grove Village Board of Fire and Police Commissioner's Summary Judgment Motion [#27] is denied as to Plaintiffs Quinn and Hall, and granted as to Plaintiff McVeigh.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 2 4 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 42 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| jar (1c) | courtroom deputy's initials | 02 DEC 23 PM 5:43 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
DEC 2 4 2002

KEVIN QUINN, HOWARD HALL, and )
BRIAN McVEIGH )
)
Plaintiffs, )
) No. 01 C 8504
v. )
) HONORABLE DAVID H. COAR
VILLAGE OF ELK GROVE BOARD OF )
FIRE AND POLICE COMMISSIONERS, et )
al. )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Defendants motions for summary judgment. For the reasons stated in this opinion, the Village Board Defendants' motion for summary judgment is denied as to Plaintiffs Quinn and Hall and granted as to Plaintiff McVeigh. Defendant MacArthur's summary judgment motion is denied as to all Plaintiffs.

**Factual and Procedural Background**

Plaintiffs Kevin Quinn ("Quinn"), Howard Hall ("Hall"), and Brian McVeigh ("McVeigh") are firefighters in the Village of Elk Grove, Illinois. Quinn and Hall have been employed by the Elk Grove Village Fire Department for twelve years; McVeigh has been employed there for ten years. Plaintiffs are also active members of the Elk Grove Village Professional Firefighters Association, Local 2340 ("the Union"). Quinn is the Union President, Hall is the Union Vice-President, and McVeigh is a member of the Union's bargaining committee. Their duties as union officers include filing grievances, engaging in interest

1

42

arbitration, and negotiating contracts on behalf of the members of the Elk Grove Village Professional Firefighters Association.

There are five Defendants in this lawsuit. Four of the Defendants are related to the Board of Fire and Police Commissioners of the Village of Elk Grove ("the Village Board"). The Village Board Defendants are the Village Board itself and the following of its officers: Gayle B. Bantner, Chairman and member of the Village Board; Alan J. Shapiro, Secretary of the Village Board; and H. Robert Goldsmith, Commissioner and member of the Village Board. The other Defendant, James MacArthur, is the Fire Chief of the Village of Elk Grove Fire Department.

During the spring and summer of 2001, the Village Board conducted an examination to determine eligibility for promotion to fire lieutenant. The examination was scored on a 100 point scale, with each of six components accounting for a portion of the score. The two most important components of the examination were the written exam and the group interview, which each accounted for 40 percent of the score. The remaining 20 percent was divided equally among four components: the individual oral interview, seniority points, chief's points, and deputy chief's and captain's points. After the exam totals were computed, those applicants with requisite military service were eligible for up to 3.5 additional points. Those applicants with a combined total of 70 or greater become eligible for promotion to lieutenant. The Village Board Defendants performed the evaluations of the group and individual interviews. Defendant MacArthur allocated the chief's points.

The written examination is administered and scored by Police Consultants, Inc. (PCI). The examination consists of 119 questions that are divided into three component areas: Haz Mat (Hazardous Materials), Company Officer, and Essentials Firefighting. The written examination

is scored anonymously by ID number. The Plaintiffs performance on the written exam was as follows: Quinn scored 73.11 percent, placing him nineteenth out of twenty-five applicants; Hall scored 67.23 percent, placing him twenty-fourth out of twenty-five applicants; and McVeigh scored 69.75 percent, placing him twenty-third out of twenty-five applicants.

In the group interview, the Commissioner Defendants (Bantner, Shapiro, and Goldsmith) interviewed firefighters in groups of five or six. The following categories are listed on the group interview scoresheets the Commissioners used: appearance, social appropriateness, verbal fluency, listening comprehension, judgment, creativity, social interaction, and leadership. During the group interviews, the Commissioners did not ask any questions pertaining to the union membership or activities. The candidates' scores in the group interview ranged from 62.22 to 76.81. Plaintiffs received the three lowest scores for the group interview: Quinn received 62.22; McVeigh received 66.60; and Hall received 64.65.

The Commissioners also conducted the individual interviews. During the individual interviews, candidates were asked three or four questions that probed their readiness for the promotion, e.g. "Why do you want to be a lieutenant?," "What have you done to prepare yourself for the job?," "Why are you the best candidate for the job?"). In addition to the standard questions, Plaintiffs Quinn and Hall were both asked questions relating to union issues during their individual interviews. Quinn was asked for his opinion about pending legislation that would change promotion policies for firefighters. Hall was asked for his opinion about the Fair Labor Standards Act. The candidates' scores in the individual interviews ranged from a low of 3.2 to a high of 4.6 on a 5 point scale. Quinn, Hall, and McVeigh all received scores at the low end of the range: Quinn received a 3.7, the third lowest score; Hall received a 3.8, the fourth

3

lowest score; and McVeigh received a 3.9, the sixth lowest score.

Defendant MacArthur was responsible for evaluating the candidates and giving them "chief's points" on a scale of one to five. MacArthur evaluated all candidates on Fire Lieutenant Candidate Evaluation Forms. The forms contained the candidates' numerical scores as well as a narrative evaluation. The narrative evaluations generally contained an introductory paragraph that described the candidate's experience and qualifications, a paragraph describing the candidate's technical certifications (e.g. Fire Apparatus Engineer, service on the hose committee, paramedic), and a final paragraph summarizing the candidate's potential. MacArthur's narrative evaluations of Plaintiffs as well as other firefighters demonstrates, at least, an awareness of the candidates' level of involvement in and support for the union. MacArthur's generally positive evaluation of Quinn focused almost entirely on his role as union president; Quinn received 4 of 5 points. In MacArthur's evalution of Hall, the only negative components related to his role in the union; Hall received 3 of 5 points. MacArthur's evaluation of McVeigh was also critical of his support for the union position in disagreements with management; McVeigh received 3 of 5 points.

When their scores were totaled, Quinn was the only one of the Plaintiffs who qualified for the lieutenant eligibility list. His score of 70.83 was the lowest combined score of those firefighters on the eligibility list. Plaintiffs believe that they received low scores on the subjective components of the lieutenant's exam, i.e. the group interview, the individual interview, and the chief's points, in retaliation for their exercise of First Amendment rights to freedom of association and speech on behalf of the union.

On October 4, 2001, Plaintiffs filed a two count complaint in state court. Count I alleged

4

that Defendants violated the Illinois Administrative Review Act, 735 ILCS 5/3-101. Count II alleged that Plaintiffs received lower evaluations because of their involvement in the union, and therefore violated their federal constitutional rights under 42 U.S.C. §1983. On November 6, 2001, Defendants removed the lawsuit to federal court. On January 10, 2002, this Court declined to exercise supplemental jurisdiction over Count I of the complaint and Count I was subsequently remanded to state court.[1] Defendants have now moved for summary judgment on Count II of Plaintiffs' complaint.

## SUMMARY JUDGMENT STANDARD

A summary judgment motion should be granted if there is "no genuine issue as to any material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating the issues, the Court views all the evidence in the light most favorable to the non-moving party.

In order to establish a § 1983 retaliation claim based on the First Amendment, a plaintiff must demonstrate that (1) his conduct was constitutionally protected and (2) his conduct was a "substantial factor" or "motivating factor" in the defendant's challenged actions. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Thomsen v. Romeis, 198 F.3d 1022, 1027 (7th Cir. 2000). This is not the usual First Amendment retaliation case where the

---

[1] Plaintiffs state law claim was denied in state court on October 3, 2002. See Quinn v. Elk Grove Village, 01 CH 16623 (Circ. Ct. Cook Cty. Chancery Div. Oct. 3, 2002). The state court judgment is not dispositive here because the standards of proof for the state administrative law claim are quite different from the standards for this §1983 action. Additionally, neither party submitted the opinion to the Court for consideration.

Plaintiffs claim they are being punished for exercising their freedom of speech; Plaintiffs here appear to be invoking their freedom of association under the First Amendment.

There is a disagreement within the Seventh Circuit about the appropriate legal standard to apply to First Amendment retaliation claims arising from associational rights. There are several cases that apply the public concern/balancing test derived from Connick v. Myers, 461 U.S. 138 (1983) and Pickering v. Bd. of Education, 391 U.S. 563, 568 (1968), to freedom of association rights. See Griffin v. Thomas, 929 F.2d 1210 (7th Cir.1991); Marshall v. Allen, 984 F.2d 787 (7th Cir.1993); Klug v. Chicago Schl. Reform Bd. of Trustees, 197 F.3d 853, 857 (7th Cir. 1999) ("In this circuit, a public employee is protected from adverse employment consequences based on the exercise of the right to freedom of association only when the associational conduct relates to a matter of public concern."). In one recent case, however, the Seventh Circuit announced that this test, though it works well with free speech claims, may not adequately protect freedoms of association. See Balton v. City of Milwaukee, 133 F.3d 1036, 1040 (7th Cir. 1998) (noting that application of the public concern test of Connick v. Myers to freedom of association claims "may lead . . . to insufficient protection of the associational rights of public employees"). In the same case, Judge Cudahy issued a special concurrence about the appropriateness of applying the public concern test to retaliation claims arising from freedoms of association. See Id. at 1040–42 (Cudahy, J., concurring). First, Judge Cudahy did "not . . . agree that the Pickering/Connick public concern test is firmly established in Seventh Circuit jurisprudence involving purely associational claims." Id. at 1041. In his opinion, which has been cited approvingly in the Second Circuit, see Clue v. Johnson, 179 F.3d 57, 60 n.2 (2d Cir. 1999) (describing Judge Cudahy's opinion as "the most sophisticated opinion on this question"), Judge

6

Cudahy went on to distinguish between pure associational claims to which, in his view, the public concern/balancing test should not be applied, and hybrid claims that contain elements of both speech and association to which the the public concern/balancing test is appropriately applied.

In this case, it appears the plaintiffs are presenting both a pure associational claim and a hybrid claim. The conduct that they claim motivated the retaliation in this case is union membership and, more significantly, union leadership. Fire Chief MacArthur's evaluations were not directed exclusively to union leadership. Defendant MacArthur's evaluations appeared to be focused on certain attitudes or positions taken with regard to union issues within the fire department. Those aspects of Plaintiffs' behavior are more readily characterized as speech than association, so with respect to Defendant MacArthur, at least, the claim appears to be a hybrid speech/association claim, to which the public concern/balancing test is appropriately applied.

With respect to the Village Board Defendants, however, it is unclear whether their alleged retaliation was related to the Plaintiffs' association with the union or their speech about issues relating to labor/management relations. Both Hall and Quinn made statements relating to the Union during their individual interviews, so those claims would be hybrid speech and association claims. Their poor evaluations during the group interview, though, could conceivably have been based solely on their leadership positions in the Union. The claims relating to the group interview, then, should be analyzed under a "pure association" test.

What the "pure association" test might be is unclear from Seventh Circuit precedent. Judge Cudahy recommends looking for guidance to the 1968 case of McClaughlin v. Tilendis. 398 F.2d 287 (7th Cir. 1968). Plaintiffs in McClaughlin were fired for joining a teachers union

7

and the Seventh Circuit held that plaintiffs had the right to form and participate in teachers unions. See McClaughlin, 398 F.2d at 288–89. Even in that case, the court imported an element of balancing from the then-recently decided Pickering decision and determined whether the activities "impeded '(the) proper performance of (their) daily duties in the classroom.'" Id. at 289 (quoting Pickering v. Board of Education, 391 U.S. at 572–73). The alleged beacon shining from McClaughlin did not lead us out of the wilderness. The Court will continue to apply the public concern/balancing test to Plaintiffs' claim.

Unions are among the quintessential types of associations the First Amendment freedom of association protects. See Marshall v. Allen, 984 F.2d at 799 (noting that "most of the reported cases in this area revolve around an employee's right to associate in order to express political ideas through a union"). The Defendants concede, as they must, that Plaintiffs' roles in the union were protected under the First Amendment.[2] See, e.g., Clue v. Johnson, 179 F.3d at 60 ("There is no doubt that retaliation against public employees solely for their union activities violates the First Amendment.").

As is often the case in retaliation claims, the more pressing question is whether Plaintiffs protected conduct was a motivating factor in the Defendants' evaluation of Plaintiffs on the fire lieutenant's promotion examination. Plaintiffs here do not need to establish that they would have been promoted but for the Defendants' challenged actions. Rather, they only need to establish that Defendants' evaluated them poorly because of their union activities. It has been clearly

---

[2]While not all union activities are protected, see Stagman v. Ryan, 176 F.3d 986, 999 n.4 (7th Cir. 1999) (quoting Hanover Twp. Fed. of Teachers Local 1954 (AFL-CIO) v. Hanover Comm. Sch. Corp., 457 F.2d 456, 460 (7th Cir.1972)), the activities in question in this case do not resemble those that fall outside the cover of the Constitution.

established in this Circuit that "punitive acts short of discharge . . .in retaliation for an employee's protected speech could give rise to liability for damages. See e.g., Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982)." Wright v. Illinois Dep't of Children & Family Servs., 40 F.3d 1492, 1499 (7th Cir. 1994). The rationale for affording relief on First Amendment retaliation claims is that the challenged conduct, if it continued, would chill the exercise of First Amendment rights. See Connick v. Myers, 461 U.S. 138, 144–45 (1983) ("The issue was whether government employees could be prevented or 'chilled' . . . from joining political parties or other associations that certain public officials might find 'subversive.'"). If the Plaintiff's allegations are proved to be true, then it is likely that Defendants' behavior would discourage firefighters who desire promotions from active participation in the union. It is precisely this type of discouragement that Section 1983 was devised to prevent. The critical issue, of course, is the Defendants motivation.

Although the three Plaintiffs present unified opposition to the motions for summary judgment, the particular circumstances of each of their examinations require separate consideration. The Court will consider the case of each Plaintiff against the Village Board Defendants and the Chief separately below.

### Plaintiff Quinn

Chief MacArthur clearly took his union role into consideration in his evaluation, but the question becomes whether his evaluation would have been the same without it. See Thomsen v. Romeis, 198 F.3d 1022, 1027 (7th Cir. 2000)(holding plaintiff cannot prevail if defendant shows that the action would have been the same without the protected conduct). Chief MacArthur did not give many 4s and yet fewer 5s, so Quinn's claim against the Chief could fail. This assumes, however, that Quinn only earned a 4 and not a 5. The only negative remarks in Chief

9

MacArthur's narrative evaluation of Quinn are that he is "quick-tempered at times and at other times does not always maintain control of the Union's more militant element in his role as president." Here, Chief MacArthur appears to diminish Quinn's qualification for lieutenant based on his own perception of Quinn's shortcomings as a union officer. His role in organizing the union is protected under the First Amendment. During employment disputes, the views of the Union President will often collide with the views of management. Here, it appears that Chief MacArthur believed that Quinn, the union president, failed to keep the rank and file in line. Whether he failed to get a promotion because of that alleged failure is a question of material fact for the jury. Chief MacArthur's motion for summary judgment against Quinn is denied.

For the Board, too, there remains a genuine issue of material fact about both Quinn's group interview and his individual interview. In the group interview, Quinn received the lowest score of all the candidates. The Commissioners testified that they often gave additional consideration to the individual who answered the group question at the end of the group interview. Quinn answered the group question, but he received a lower score than another member of the group that allegedly violated the rules of the interview. The reason for his lower score varied slightly among the three commissioners. Defendant Shapiro submitted that Quinn's "answers were more brief and exhibited less creativity than other applicants in his group." (Shapiro Decl. ¶ 9) Defendants Goldsmith and Bantner submitted, in identical language, that Quinn's "answers were more brief . . . and his demeanor was less appropriate." (Goldsmith Decl. ¶ 9; Bantner Decl. ¶ 9) Quinn disputes their account. He recalls that several other firefighters were concurring with his answers during the group interview. (Quinn Dep. at 66–67) The determinations about credibility and accuracy of memory are questions of fact for the jury to

resolve.

Similarly, in the individual interview, there remain genuine issues of material fact. During Quinn's individual interview, For the commissioners to be asking about currently pending legislation that the union supported and the board opposed during his individual interview raises an inference that they considered his answer in their evaluation. The Commissioners all indicate that they had finished grading Quinn on his individual interview before they asked about the promotion legislation. Quinn recalls that the question about the legislation occupied approximately half of the individual interview, and he therefore denies that they had graded him before hearing his response. Once again, this is a question of material fact for the jury. Taking all evidence in the light most favorable to Plaintiff Quinn, the Board Defendants motion for summary judgment must be denied.

**Plaintiff Hall**

As with Quinn, Chief MacArthur clearly took Hall's Union participation into consideration in Hall's evaluation. Hall received three of a possible five chief's points. MacArthur's only criticisms of Hall in his evaluation relate to his participation in the Union. Chief MacArthur recognizes that Hall "has leadership skills and abilities, which for the most part he has chosen to funnel into Union-related activities in his role as Vice-President." (Pl. Resp. to Def. St. Facts, Ex. H, Evaluation of Hall) MacArthur's recognition of Hall's use of these skills is clearly meant as a criticism when considered in the context of the evaluation as a whole. MacArthur goes on to say that Hall "will ... go to the extreme, especially as regards Union related issues, to protect [the Union's] cause whether actual or perceived." (Id.) In at least three other evaluations of candidates who scored higher than Hall, Chief MacArthur made favorable remarks

11

about candidates who either sided with management in labor disputes or remained on the sidelines during those disputes. It is clear that Hall's role in the Union figured prominently in Chief MacArthur's evaluation. Whether it was the substantial motivation in his final score is a question of material fact that remains the province of the jury. Chief MacArthur's summary judgment motion against Hall is denied.

As to the Village Board Defendants, Hall received the second lowest score in the group interview. Commissioner Shapiro submitted that Hall received a lower score in the group interview because his "answers were brief, and demonstrated less creativity" than others in his group. (Shapiro Decl. ¶7) Bantner and Goldsmith both declared, again in identical language, that Hall "exhibited less extensive interaction . . . and his appearance was less professional than others in his group." (Goldsmith Decl. ¶7; Bantner Decl. ¶7) Hall's memory of the group interview tells a different tale. He submitted that the other interview candidates were giving standard responses and "sugar-coating" their answers. (Hall Dep. at 58-65) The question remains whether Hall's union membership was a motivating factor in his lower evaluation. Neither side submitted sufficient proof on this factual issue to resolve the question of material fact.

### Plaintiff McVeigh

As with Quinn and Hall, Chief MacArthur clearly took McVeigh's position on labor issues into consideration in McVeigh's evaluation. He described McVeigh as "one of the boys" who is found in the camp of the "vocal minority." From examining all of Chief MacArthur's evaluations, it is clear that these are references to union related issues. If there were any further doubt, Chief MacArthur goes on to point out that McVeigh "doesn't often take or support management's position." McVeigh has not established persuasive proof that Chief MacArthur

evaluated him more poorly because of his union participation, but he has provided sufficient evidence to establish a genuine issue of material fact. Chief MacArthur's summary judgment motion against McVeigh must be denied.

The Village Board Defendants are in a different position with regards to McVeigh. McVeigh was a member of the team that negotiates collective bargaining agreements between labor and management. Plaintiff McVeigh has offered no evidence that the Board Defendants knew of his status within the union. They assert that they were not aware of McVeigh's role within the union. Unlike Quinn and Hall, McVeigh did not contest that assertion. "In order to establish that a defendant retaliated against a plaintiff because of a protected constitutional right, a plaintiff must demonstrate that the defendant ... knew of the plaintiff's constitutional activities." Stagman v. Ryan, 176 F.3d 986, 999 (7th Cir. 1999). Without evidence of their knowledge, it is impossible for McVeigh's First Amendment protected activities to have been a motivating factor in his low scores. As such, the Village Board Defendants' motion for summary judgment must be granted as to Plaintiff McVeigh.

## CONCLUSION

For the reasons given in this opinion, the Village Board Defendants motion for summary judgment is granted as to McVeigh, and denied as to Hall and Quinn. Fire Chief MacArthur's motion for summary judgment is denied.

Enter:

_____
David H. Coar
United States District Judge

Dated: December 23, 2002

13